UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LORETHA HART,

    Petitioner,

v.                                           Case No. 8:16-cv-770-T-36AAS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Loretha Hart timely filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1) challenging her Pinellas County convictions. Respondent filed a response (Dkt. 21) and Hart filed a reply (Dkt. 27). Upon consideration, Hart's petition will be DENIED.

## Procedural History

The State charged Hart with armed robbery and conspiracy to commit armed robbery. (Dkt. 25, Ex. 1, pp. 9-10). Hart entered open guilty pleas to both charges. (*Id.*, pp. 89-90). She was sentenced to concurrent terms of 25 years in prison, with 10 years suspended and to be served on probation. (Dkt. 25, Ex. 3, pp. 253-54). The state appellate court *per curiam* affirmed the convictions and sentences. (Dkt. 25, Ex. 7). The state appellate court also *per curiam* affirmed the denial of Hart's motion for postconviction relief, filed under Florida Rule of Criminal Procedure 3.850. (Dkt. 25, Exs. 9, 11).

## Standard Of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding.

*Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000). A decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. *See also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement.").

The state appellate court affirmed the convictions and sentences and the denial of postconviction relief without discussion. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir. 2002). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

**Ineffective Assistance Of Counsel**

Claims of ineffective assistance of counsel are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. To show deficient performance, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. A court must consider whether, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Because Hart entered a plea, her counsel owed her a "lesser duty" than he would have had she gone to trial. *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). Counsel was only

required to provide Hart "with an understanding of the law in relation to the facts" to enable her to make an informed choice between pleading and going to trial. *Id*.

Hart must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To show prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Because Hart entered a plea, the prejudice inquiry focuses on whether counsel's alleged deficient performance "affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). *See also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (this doubly deferential standard of review "gives both the state court and the defense attorney the benefit of the doubt.").

**Discussion**

Ground One

Hart claims that the trial court violated her due process rights by holding her "protestation of innocence" and "lack of remorse" against her at sentencing. (Dkt. 1, p. 5). Hart does not clearly raise a federal claim in Ground One. A claim that does not allege a federal constitutional violation

is not cognizable in a federal habeas proceeding. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir.1988) ("[A] habeas petition grounded on issues of state law provides no basis for habeas relief."). Even liberally construing Ground One as alleging a federal due process violation, however, it is barred from review. A federal habeas petitioner must exhaust her claims by presenting them in state court before raising them in her habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").

Hart did not satisfy the exhaustion requirement because she did not present the federal nature of the claim on direct appeal. (Dkt. 25, Ex. 5). *See Pearson v. Sec'y, Dep't of Corr.*, 273 Fed. App'x 847, 849-50 (11th Cir. 2008) ("The exhaustion doctrine requires the petitioner to 'fairly present' his federal claims to the state courts in a manner to alert them that the ruling under review violated a federal constitutional right."); *Zeigler v. Crosby*, 345 F.3d 1300, 1307 (11th Cir. 2003) ("To present a federal constitutional claim properly in state court, 'the petitioner must make the state court aware that the claims asserted present federal constitutional issues.'" (quoting *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998))).[1]

State procedural rules do not provide for successive direct appeals. *See* Fla. R. App. P. 9.140(b)(3) (a notice of appeal must be filed within 30 days of the rendition of a written sentencing order). Because Hart is prohibited from returning to state court to present the federal due process argument, her claim is procedurally defaulted. *See Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001) ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure

---

[1] In her reply, Hart contends that she also raised the claim in her postconviction motion. While Hart's postconviction motion presented the related ineffective assistance of trial counsel claim raised in Ground Four of her habeas petition, her postconviction motion did not contain the trial court error claim raised in Ground One of her habeas petition. (Dkt. 25, Ex. 9, pp. 1-10).

is a procedural default which will bar federal habeas relief."). The claim is barred from review unless Hart establishes the applicability of either the cause and prejudice or fundamental miscarriage of justice exception. *See id*.

Hart does not establish that an exception applies to overcome the default. In her reply, Hart states that "[a] 'fundamental miscarriage of justice' was in fact established once the Petitioner's right to due process was violated." (Dkt. 27, p. 1). To the extent Hart contends that the fundamental miscarriage of justice exception applies, her argument fails. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). This exception requires a petitioner's "actual" innocence, rather than mere legal insufficiency. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). Such a "claim of innocence is . . . 'not itself a constitutional claim, but instead a gateway through which a petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Schlup*, 513 U.S. at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)). "To be credible, . . . a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Id*. at 325. Hart has not presented any new, reliable evidence of her actual innocence. Accordingly, she fails to establish that the fundamental miscarriage of justice exception applies to excuse the default. Ground One is barred from review.

Ground Four

Hart alleges that counsel was ineffective in failing to object when, in determining her sentence, the court considered her "failure to admit guilt, lack of remorse, and [the court's] opined

sense that she lied" at a competency hearing. (Dkt. 1, p. 9). The factual basis for Hart's plea provided that Hart enlisted the help of numerous co-defendants to rob a pain clinic in St. Petersburg, Florida. (Dkt. 25, Ex. 2, pp. 175-77). On the morning of May 12, 2010, Hart visited the pain clinic. (*Id.*, p. 176). While there, she called her son, Jared Murray. (*Id.*). Jared Murray and two other co-defendants, Larry Boyd and Kenneth Baxter, then met with Hart at Hart's home. (*Id.*). Hart told them where pills and a safe were located in the clinic. (*Id.*). She also provided co-defendant Lindsey Sermon with a pillowcase and told him to use the pillowcase because it would not pick up fingerprints. (*Id.*).

Jared Murray provided guns to Baxter and Sermon, who carried them into the clinic. (*Id.*, pp. 175, 176-77). Sermon confronted a manager at gunpoint, hit her over the head, and took $3,000 in cash and numerous pain pills from a safe. (*Id.*, p. 175). After leaving, Sermon, Baxter, and another co-defendant, Stewart Lucas, got into a car with Jared Murray and Jacob Murray. (*Id.*, pp. 175-76).[2] They returned to Hart's house, where all the co-defendants, including Hart, divided the pills and money. (*Id.*, p. 176). Hart was not present at the clinic at the time of the robbery, and did not possess a gun. (*Id.*, p. 177).

At the sentencing hearing, after presenting several mitigation witnesses, Hart denied that she had been on the phone with her son while at the clinic. (*Id.*, p. 203). Hart said that she was on the phone with another doctor's office. (*Id.*, pp. 203-04). The court then stated:

> You know, I always rely - - on people that come to court, I rely on the presentence investigation, I rely on the lawyers, what they tell me, and I rely on the defendant to be truthful with me. . . . Okay? And the facts as they became known to me is that was the start. That was the start of this incident. That was the call to arms. That was the call to arms and that was the very beginning of getting this whole thing

---

[2] It appears that Jacob Murray is also Hart's son.

> together.
>
> You don't want to come forward and say, Judge, I made a mistake. You don't want to say I sure am sorry that this happened. But your two boys are in prison today because of what started on your phone call. And I have to take issue with you because they had phone records not only of you but of your son who received the call. So it wasn't some other doctor's office.
>
> Here's another thing I want to say to you today. This presentence investigation, this is what they concluded. Now, they've concluded this, they concluded this, but of course whoever wrote this didn't have the input from the people that came to court in mitigation.
>
> But this is what the people that wrote the recommendation to me said. They said the offender, that's you, chose to focus on the point that she was not at the robbery when it occurred. What is more disturbing, that the offender instructed her own sons to commit a violent felony.
>
> And they said the officer recommends that the offender be sentenced to 25 years in prison. But, you see, she didn't know all the mitigation because we know you didn't hold a gun. You didn't hold a gun.
>
> And they were also suggesting a 10-year minimum mandatory, which you can't impose because it only goes for people that actually, actually possess a gun. You didn't actually possess a gun during this incident. They said that you didn't speak of the details of the case, you didn't show any remorse. And so, now let's look at the other thing about the PSI.

(*Id.*, pp. 205-07).

The court reviewed Hart's criminal history, including her convictions for theft, dealing in stolen property, battery, sale and possession of cocaine, and harassing telephone calls. (*Id.*, pp. 207-08). The court continued:

> But here are the mitigators as I see them. Yes, you do have some mental health issues and you also have some health issues. Well, lots of people in prison have both mental health issues and health issues, lots of people in prison.
>
> What are the aggravators? From my position, I see your two sons conspired with you. And usually sons look to a mother for guidance. Usually sons look to a mother for guidance. If this was your idea, you led them into trouble. If this was their idea, you should have counseled them out of trouble. But neither happened. The conspiracy and the robbery went forward.

It wasn't simply stealing, like you've done in the past. Now this was taking by force, violence, assault, putting someone in fear. Someone got whacked on the head. And what went out the door? Money and those highly addictive oxycodone pills, a whole cache because this was a clinic that had that kind of drugs. It was like a pharmacy type clinic.

They all meet up at your house and it's all split up. You take some drugs, you take some money, you take some drugs, you take some money. And how do I know this? Because the jury trial involving one of your sons, it was all laid out.

So, yes, this was a - - and under the law of principal, when you have people all engaged in a crime, if you do some act or say some word that furthers this criminal conspiracy, you're as guilty as the people that go in and commit it. So that's like a bank robbery. If a person is a getaway driver and the guys go into a bank and commit the bank robbery with guns, the law says that that getaway driver is as guilty as the people that go into the bank.

Well, in this case it wasn't a bank, but it was a place where there was money, this was a place where there were narcotics. And do we know that you dabble in narcotics? Well, we know that in the past because you have two convictions for selling and possessing cocaine.

So, at any rate, I found also that you were not being candid with the Court in the hearing that I had on your competence, and I agreed with the experts that said that you were malingering to try to get out of facing your responsibility in this case.

So now we've talked about the mitigation, we talked about aggravation. The people that have spoke on your behalf are friends. They're some longstanding friends. Some are religious counselors who have taken you as, in effect, a child of the church and tried to counsel you.

I'm not here to judge you as a person and say you're a bad person, Loretha Hart. I'm not going to say you're a good person, Loretha Hart. But I am going to say this. You have to take responsibility for the actions that you put into play back on this date. In your wake there are numerous people that are in prison. One of your own boys, one of your own sons doing a life sentence.

If only, if only you had thought, recalled, preached some of the words that your religious mentors have told you, because you have a responsibility, you have a responsibility with your age to keep others out of danger, out of prison. You didn't do that in this case and you divided the spoils. You divided the spoils.

So this is the situation that I find myself in. The Department of Corrections is recommending a 25-year sentence. I'm going to impose a sentence and then I'm

going to suspend a portion of the sentence and put you on probation because, from the PSI, it looks like you do well when you're on probation.

So here it is. Twenty-five years in [the] Department of Corrections with 10 of those years suspended. So I've taken into account mitigation offered in this case . . .

. . .

So, in effect, with all the mitigation that your lawyer brought in today, it convinced me to - - they wanted me to give you 25 years, end of story, and with that mitigation I was able to suspend 10 years of that 25. That mitigation, your lawyer's presentation here, convinced me to suspend some of that time.

(Dkt. 25, Ex. 2, pp. 208-11, 213).

Hart claimed in her postconviction motion that counsel was ineffective in failing to object to the court's consideration of her lack of candor and failure to take responsibility. The state court denied this claim:

> Defendant alleges that counsel was ineffective for failing to object when the Court considered Defendant's failure to admit guilt, lack of remorse, and the Court's opinion that she lied during a competency hearing, when determining her sentence. Defendant alleges that, had counsel objected, there is a reasonable probability that Defendant would have been sentenced by a different judge and that the outcome would have been different.
>
> Defendant cannot show the prejudice required under <u>Strickland</u>. The record reflects that the Court considered Defendant's extensive prior record as well as the egregious circumstances of the case, specifically, that Defendant engaged her two sons in the commission of the armed robbery. Despite these factors, the Court imposed a sentence less than the maximum of life in prison, and allowed Defendant to serve the last ten years of the 25-year sentence on probation. Therefore, even if counsel had objected, and, even if, as Defendant suggests, the sentencing had been conducted by a different judge, she cannot show that there is a reasonable probability that she would have received a lighter sentence. Based on the foregoing, Ground Five of Defendant's motion is denied.

(Dkt. 25, Ex. 9, p. 18) (court's record citations omitted).

The court did not unreasonably deny Hart's claim on *Strickland*'s prejudice prong. Hart fails to show that an objection would have succeeded. The court did not improperly consider Hart's

truthfulness and lack of remorse in determining her sentence based on the aggravating and mitigating circumstances:

> The courts have held that "[c]onsideration of remorse is ... appropriate if it occurs during a court's consideration of whether or not to mitigate a sentence." *Rankin v. State*, 174 So.3d 1092, 1097 (Fla. 4th DCA 2015); *see also K.N.M. v. State*, 793 So.2d 1195, 1198 (Fla. 5th DCA 2001) (holding that "remorse and an admission of guilt may be grounds for mitigation of a sentence or a disposition"); *Godwin v. State*, 160 So.3d 497, 498 (Fla. 2d DCA 2015) ("[W]e agree with the postconviction court that in context, the trial court's comments at sentencing were made in connection with its rejection of the argument for mitigation."); *Shelton v. State*, 59 So.3d 248, 250 (Fla. 4th DCA 2011). After the trial court found there were no mitigating factors, it then examined all of the evidence presented in arriving at its sentence. Under these circumstances, we do not believe it was error for the trial court to consider Corbitt's lack of remorse or failure to take responsibility for his crimes during sentencing.

*Corbitt v. State*, 220 So. 3d 446, 450 (Fla. 5th DCA 2016).

The sentencing court clearly considered Hart's mitigation evidence, stating that the mitigation convinced the court to suspend part of her prison sentence. And, as the state court found, Hart failed to show a reasonable probability that she would have received a lesser sentence even if counsel had objected and secured resentencing before a different judge. Accordingly, Hart has failed to demonstrate prejudice resulting from counsel's failure to object at the sentencing hearing. The state court did not unreasonably apply *Strickland* or unreasonably determine the facts in denying Hart's claim. She is not entitled to relief on Ground Four.

Ground Two

Hart alleges that trial counsel was ineffective in failing to advise her of a "discrepancy between the heading and the body of the Information as to the offense charged." (Dkt. 1, p. 6). She claims that "the offen[s]e described in the body is one in which defendant is charged with Armed Robbery; where the Charging Instrument does not allege that Defendant possessed a firearm or any other weapon at the time of the crime." (*Id.*).

The record supports a finding that Hart's plea was voluntary. The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). "A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: 'If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review.'" *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) (quoting *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980)).

Although a defendant's statements during a plea colloquy are not insurmountable, "the representations of the defendant, his lawyer, and the prosecutor at [a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

The transcript from Hart's change of plea hearing demonstrates that Hart understood the charges against her and possible penalties she faced. (Dkt. 25, Ex. 2, pp. 134-35, 137). It also indicates Hart's understanding that an open plea carried no guarantee of a sentence for any term of years and that the judge would determine the sentence after hearing mitigation. (*Id.*, pp. 168-69). Hart also told the court that she understood the rights she waived by pleading, and that she was not forced, coerced, or threatened into entering the plea. (*Id.*, pp. 171-73). The court found that Hart entered her plea freely and voluntarily. (*Id.*, p. 177).

Because Hart's claim alleges a constitutional deprivation occurring before the entry of her guilty plea, it is barred from review. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."). Accordingly, only "an attack on the voluntary and knowing nature of the plea can be sustained." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992). Liberally construing Hart's claim as involving the voluntariness of her plea, however, she fails to show that counsel was ineffective. The state court summarily denied Hart's claim:

> Defendant asserts that counsel was ineffective for failing to advise her of a discrepancy in the information, namely, that the heading charged her with armed robbery, and the offense described was not armed robbery. Defendant claims that, since the body of the information lacked an allegation that she possessed a firearm, she could not be charged with armed robbery, and that, had counsel advised her of the discrepancy, she would have received a lighter sentence.
>
> Defendant cannot demonstrate either that counsel was deficient or that she was prejudiced. The information charged Defendant and four other individuals with armed robbery and conspiracy to commit armed robbery. The fact that the information does not allege that the Defendant possessed or carried a firearm is not relevant because the Defendant was charged as a principal to the crime of armed robbery pursuant to § 777.011, Florida Statute, which states:
>
>> Principal in the first degree. – Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such, whether he or she is or is not actually or constructively present at the commission of such offense.
>
> § 777.011, Fla. Stat. (2009). The information alleged that Jared Murray, Lindsey Sermon, and Kenneth Baxter possessed and carried a firearm. For the purposes of a conviction of armed robbery pursuant to § 812.13(2)(a) and § 777.011, Florida Statute, it does not matter which of the defendants actually carried a firearm during

the commission of the crime. If the State is able to prove that a defendant intended to commit the crime of armed robbery and did some act to assist in the commission of the crime, or the defendant pleads guilty to the charge, he or she is guilty as a principal under § 777.011. See Staten v. State, 519 So. 2d 622, 624 (Fla. 1988). Accordingly, there was no discrepancy between the heading of the information and its body, and counsel cannot be deemed deficient for failing to take any action on this matter. Further, Defendant was not prejudiced by counsel's failure to take action because the maximum sentence for principal to an armed robbery is the same as that of armed robbery, life in prison. See Fla. Stat. §§ 812.13(2)(a), 775.087(2)(a), 777.011.

(Dkt. 25, Ex. 9, pp. 14-15) (court's record citation omitted).

The record shows that the second amended information listed "robbery" in the heading for count one, and within the body of count one, the State alleged that co-defendants Jared Murray, Lindsey Sermon, and Kenneth Baxter possessed a firearm. (Dkt. 25, Ex. 1, p. 9).

There is support for the state court's finding that the information did not contain any error or discrepancy to which counsel should have objected. As the state court explained, under Florida law, Hart could be charged as a principal to armed robbery even though the State did not allege that she possessed a firearm. *See* § 777.011, Fla. Stat.[3] And despite the omission of the word "armed" from the heading of the count, the body of the document clearly put Hart on notice that the State charged her with armed robbery. *See Miller v. State*, 42 So. 3d 204, 216-217 (Fla. 2010) (defendant could not show prejudice from an error in the information when the information placed him on notice of specific crime with which he was charged and there was no indication that defendant was misled about the charge, embarrassed in the preparation of his defense, or exposed after conviction

---

[3] To the extent the state court's ruling turned on an application of state law, this Court must defer to the state court's decision. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'" (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997))).

to a substantial danger of a new prosecution for the same offense). Accordingly, Hart fails to show that her attorney performed deficiently in not challenging the information. Hart has not established that the state court's denial of her claim involved an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts. She is not entitled to relief on Ground Two.

Ground Three

Hart contends that counsel did not engage in plea negotiations with the State until three days before the date her case was set for trial. She claims that trial counsel was ineffective in failing to attempt plea negotiations earlier. Because Hart does not allege that counsel's alleged deficiency affected the voluntary nature of her plea, this claim is barred under *Tollett*. Alternatively, Hart fails to show entitlement to relief on her claim. The state court denied this argument when Hart raised it in her postconviction motion:

> Defendant claims that counsel rendered ineffective assistance by failing to attempt plea negotiations with the State at any time before three days prior to trial. She claims that, had counsel attempted plea negotiations sometime prior, there is a reasonable probability that a negotiated disposition could have been reached and that her sentence would have been different.
>
> Defendant's claim is without merit because she cannot show she was prejudiced by any lack of attempt at plea negotiations on the part of counsel. At Defendant's change of plea hearing, the prosecutor stated on the record that the State was not interested in any offers, that it was seeking a trial, and that it would seek a life sentence if Defendant was found guilty at trial. Furthermore, the Court stated on the record that prosecutors in the division in which Defendant was prosecuted did not make offers. Therefore, it would have been necessary for Defendant to make an acceptable offer to the State. Defendant then put on the record that she had made an offer of three years and that the Court had declined to accept it. The record further reflects that the bottom of the sentencing guidelines was a sentence of just slightly over eight years. Based upon the discussion between the defense, the State, and the Court at Defendant's change of plea hearing, the Court finds no reasonable probability that, had counsel attempted to negotiate a plea agreement with the State prior to three days before the trial, the outcome of the proceedings would have been different. Furthermore, at Defendant's sentencing hearing in this matter, the State put on the record that it was seeking a life sentence and that it always had been,

based upon Defendant's prior record, the facts of the case, and her actions. The record makes clear that the State was not amenable to any offers and that Defendant was not inclined to make an offer of a substantial amount of prison time. Accordingly, because Defendant cannot show the requisite prejudice, Ground Two of her motion is denied.

(Dkt. 25, Ex. 9, pp. 15-16) (court's record citations omitted).

The record supports the state court's conclusion. At the change of plea hearing, the prosecutor indicated that the State was willing to agree to an open plea (Dkt. 25, Ex. 12, p. 132), but that the State would ask for a life sentence:

> It's basically on the eve of trial. We're looking for a trial. We're not making any offers in this case. I'm not making any offers, not sent anything to [defense counsel]. If Ms. Hart wants to plead open to the Court, I'm not even capping it. We're seeking a life sentence after trial.

(*Id.*, p. 131).[4]

Despite the prosecutor's noting the proximity to trial, there is no indication that the prosecutor was at any time willing to agree to a negotiated plea for a term of years. To the contrary, the prosecutor stated at the sentencing hearing, "for the record, the State was seeking a life sentence *and we always have been in this case against Ms. Hart* based on her prior record, the facts and her actions in this case." (Dkt. 25, Ex. 2, p. 196) (emphasis added). Accordingly, Hart has not established that counsel would have succeeded in obtaining a negotiated plea for a term of years had he started negotiations earlier. The state court did not unreasonably apply *Strickland* or unreasonably determine the facts in denying her claim.

Within Ground Three, Hart also claims that counsel failed to convey her plea offer to the state. Hart's claim is unexhausted because she did not present it to the state court in her

---

[4] At the change of plea hearing, the prosecutor adamantly denied Hart's contention that the State had made an offer for a sentence at the bottom of the sentencing guidelines, which would have been approximately eight years. (Dkt. 25, Ex. 2, pp. 139-40).

postconviction motion. (Dkt. 25, Ex. 9, pp. 1-10). The claim is procedurally defaulted because Hart cannot return to state court to present it in an untimely, successive postconviction motion. *See* Fla. R. Crim. P. 3.850(b), (h). Notwithstanding the default, Hart cannot obtain relief. Hart's claim is vague and conclusory, as she does not specify the terms of the offer, or when or under what circumstances she told counsel to convey the offer to the State. Such unsupported claims are insufficient to show ineffective assistance of counsel. *See Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) ("Conclusory allegations of ineffective assistance are insufficient.") (citation omitted); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim). Further, the record only reflects one defense offer for three years, which appears to have been rejected by the court. (Dkt. 25, Ex. 2, p. 140). But there is no indication that the State was not made aware of this offer or that the State would have accepted it. Accordingly, Hart has not demonstrated that her attorney performed deficiently in failing to convey a plea offer to the State, or that she suffered prejudice as a result. Hart is not entitled to relief on Ground Three.

Any claims not specifically addressed in this Order have been determined to be without merit.

Accordingly, it is **ORDERED** that:

1. Hart's petition for writ of habeas corpus (Dkt. 1) is **DENIED**.

2. The Clerk is directed to enter judgment against Hart and to close this case.

3. Hart is not entitled to a certificate of appealability ("COA"). A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition. 28 U.S.C. § 2253(c)(1). A COA must first issue. *Id*. "A [COA] may issue ... only if the applicant has made a substantial

showing of the denial of a constitutional right." *Id*. at § 2253(c)(2). To make such a showing, Hart "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Hart has not made this showing. Because Hart is not entitled to a COA, she is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on January 30, 2019.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Loretha Hart
Counsel of Record